UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SOLDAN,                          Case No.: 19-11334
     Plaintiff,
v.                                       Arthur J. Tarnow
                                         United States District Judge

WILLIAM R. ROBINSON,
ROBERT A. WARNER, &                      Anthony P. Patti
JAMES B. ROBERTSON,                      United States Magistrate Judge
     Defendants.
_____/

**COMBINED: (1) REPORT AND RECOMMENDATION TO DENY
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE
TO EXHAUST ADMINISTRATIVE REMEDIES (ECF Nos. 21, 26) AND (2)
ORDERS REGARDING DISCOVERY AND DEADLINES FOR
PLEADINGS**

I.    **RECOMMENDATION:** The Court should deny Defendants Robinson,

Warner, and Robertson's motions for summary judgment for failure to exhaust

administrative remedies.

II.    **REPORT**

    A.    **Background**

    Plaintiff Richard Soldan was incarcerated with the Michigan Department of

Corrections (MDOC).  Plaintiff was released on parole and under the supervision

of Defendant William Robinson in early 2017.  (ECF No. 1, PageID.4).  On April

26, 2017, Plaintiff was served with notice of parole violations.  At one point in the

complaint, he indicates that he was served with the violations while detained at the Genesee County Jail, while at another part he says his detention at the jail did not begin until May 10, 2017.  (*Id.* at PageID.4, 10).  Setting aside this inconsistency for now, he further alleges that he waived the preliminary hearing with the understanding that he would receive a "full revocation hearing" at a later date.  (*Id.* at PageID.10); (ECF No. 8, PageID.109-110).  In fact, he alleges that the form he signed (CFJ-168) specifically states that, "'I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full revocation hearing before the Parole and Commutation Board.'" (ECF No. 1, PageID.11, ¶ 7.)  The form itself confirms this and is attached to his complaint. (*Id.* at PageID.38.)

On May 24, 2017, Plaintiff was transported to Clinton County Jail, also referred to as "IDRp."  While there, he sent numerous kites, or letters, to find out when they would hold the hearing on the parole violations and when he would be released.  A parole agent responded to a kite stating that Plaintiff was guilty, there would be no hearing, and he would be at IDRp for 30-45 days.

Plaintiff says his parole violation sanctions began May 10, 2017 with his detention in Genesee County through June 22, 2017, when he was released from IDRp and taken to Howell Parole to see Defendant parole officer Robinson.  (ECF

No. 1, PageID.8).  He alleges that he was never given a hearing on the parole violation, yet was found guilty.

Plaintiff accuses Defendants Robinson and Warner of retaliating against him for threats he made in January 2017 to sue regarding his GPS tether as a condition of parole.  He alleges that they retaliated by placing false information and accusations in his parole file and instigating the parole violation process, thus putting Plaintiff in Genesee County Jail. (*Id.* at PageID.11, ¶ 3-5). Defendant Robertson approved of their actions/recommendations, and agreed to confine Plaintiff at IDRp without a hearing.  (*Id.* at PageID.12, ¶ 10-11).

Plaintiff alleges violations of the Fourteenth Amendment for lack of due process in his parole revocation and of the First Amendment for retaliation against threats to sue over the GPS tether, as well as State law claims of violation of due process under the Michigan Constitution, false imprisonment, and gross negligence.

This case has been referred to me for all pretrial proceedings.

**B.     Instant Motions for Summary Judgment**

The three remaining defendants in this case have filed motions for summary judgment.  Defendants Robinson and Warner filed their motion on November 18, 2019.  (ECF No. 21).  Defendant Robertson was inadvertently left out of that motion, so on December 4, 2019, he filed his own motion, adopting and

incorporating by reference the motion filed by Robinson and Warner.  (ECF No.

26).  Defendants argue that Plaintiff did not exhaust administrative remedies on his

claims against them.  They contend that the grievance procedures apply to

parolees, and thus applied to Plaintiff.  Plaintiff alleges a series of events beginning

on April 24th and ending June 22, 2017.  Defendants characterize his complaint as

alleging that his "due process rights were violated when his parole was effectively

revoked" during that time (ECF No. 21, PageID.151); however, Plaintiff did not

file a grievance between April 24th and within ten business days of June 22nd, per

MDOC grievance procedure.  Accordingly, Defendants argue that Plaintiff failed

to exhaust administrative remedies, and his claims should be dismissed.  (ECF No.

21, PageID.159-60).

In response, Plaintiff argues that: (1) the Prison Litigation Reform Act

(PLRA) does not apply to this case because Plaintiff complains of the fact and

duration of confinement, not of prison conditions; (2) administrative remedies were

unavailable because conditions of parole and probation and decisions made by a

parole board are not grievable under the prison grievance procedures; (3)

administrative remedies were unavailable because the required grievance forms

were unavailable or not given to him; (4) he filed "plain paper" grievances at IDRp

and Howell Parole that were ignored; and (5) he exhausted administrative remedies

with grievances filed in August and October 2017 and March 2019.  (ECF No. 30, PageID.232-43).

Defendants filed a reply on February 14, 2020, arguing that: (1) Plaintiff was subject to the exhaustion requirements of the PLRA because as a parolee he remained in the legal custody and under the control of MDOC and because he was detained on accusation/violation of the terms and conditions of parole; (2) he is subject to the PLRA because he complains of conditions of confinement—his placement on IDRp; and (3) Plaintiff's claim that grievance forms were unavailable lacks merit.  On this last point, Defendants provide the affidavit of Defendant Robinson.  Robinson avers that Plaintiff received parole orientation about the grievance process in March 2016.  This orientation informed him that if he needed to file a grievance, he had to request a Step I grievance form from Robinson and submit all completed Step I grievances to Robinson for processing.  (ECF No. 32, PageID.327-29).  However, Robinson never received a Step I grievance contesting placement in IDRp.  As for the grievance Plaintiff alleges he filed in late 2017, it was rejected as untimely, and Defendants insist that Plaintiff's contention that he just became aware of an issue in 2019 is baseless.  (*Id.* at PageID.330).  Defendants did not address Plaintiff's remaining arguments.

C.     **Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011)

("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .[T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.]" *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . .'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002) ] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").[1]

**D.    Discussion**

**1.    Prison Litigation Reform Act and its Applicability**

Under the Prison Litigation Reform Act (PLRA), a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of

---

[1] Plaintiff has more experience than the average *pro se* litigant, with multiple lawsuits filed or pending in this Court: *Soldan v. Christiansen*, 4:18-cv-13609-MFL-RSW (habeas corpus, closed 6/12/19); *Soldan v. Robinson et al*, 2:19-cv-11334-AJT-APP (prisoner civil rights, filed 5/3/19); *Soldan v. Musgrove*, 2:19-cv-11475-LJM-APP (prisoner civil rights, filed 5/20/19); *Soldan v. Robinson*, 2:19-cv-12227-GAD-MKM (prisoner civil rights, terminated 8/19/19); *Soldan v. Robinson, et al.*, 2:20-cv-11320-AJT-APP (civil rights, filed 5/11/20) – (IFP application pending).

the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (internal quotations and citations omitted). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211, 127 S.Ct. 910. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219, 127 S.Ct. 910 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

Plaintiff insists this case is not a "prison conditions" case. Rather, he contests the *fact and duration* of his confinement between May 10 and June 22, 2017, the time during which his parole was effectively revoked. He claims that Defendant Robinson retaliated against him for threatening a lawsuit by placing

false information in his parole file and causing him to be confined on a parole

violation without due process.

In my view, Plaintiff is correct.  There are "two broad categories of prisoner

petitions: (1) those challenging the fact or duration of confinement itself; and (2)

those challenging the conditions of confinement."  *McCarthy v. Bronson*, 500 U.S.

136, 140 (1991) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).  A "prison

conditions" case is different from a pre-incarceration case including, for example, a

claim against the arresting officer.  *Porter v. Nessle*, 534 U.S. 516, 529 (2002).

The former is subject to PLRA exhaustion, whereas "fact or duration" cases are

not.  *Id.* at 532 ("[T]he PLRA's exhaustion requirement applies to all inmate suits

about prison life.").  Examples of a "conditions of confinement" case include:

> The denial of religious publications[,] *Cooper v. Pate,*
> 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), the
> confiscation of legal materials[,] *Houghton v. Shafer,* 392
> U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), and, . .
> . the placement of the prisoner in solitary confinement[,]
> *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d
> 652 (1972).

*McCarthy v. Bronson*, 500 U.S. 136, 142 (1991).  A single episode of

unconstitutional conduct in the prison, such as a single incident of excessive force,

would constitute a conditions of confinement case subject to the PLRA.  *Porter v.*

*Nussle*, 534 U.S. 516, 527, 528 (2002).

The claims Plaintiff raise go to the fact or duration of his confinement, beginning with false accusations on April 24, to his confinement between May 10, 2017 and his release on June 22, 2017.  He challenges the reasoning behind the parole violation charge and his confinement, and he challenges the duration of his confinement without being given a formal hearing on the parole violation.

Defendants attempt to characterize the case as a conditions of confinement case by insisting he was complaining about the conditions of confinement—his placement at IDRp.  (ECF No. 32, PageID.328).  One could take the artful view of Plaintiff's claim as asserting that the conditions of confinement were unlawful, *i.e.*, being confined falsely, without due process and in retaliation for threatening a lawsuit.  But this view would ignore the core of Plaintiff's claim: he should not have been confined because the violation was based on false information and retaliation, and he should have been given a formal hearing on the parole violation before being held for roughly a month and a half.  *See Coles v. Ohio*, 2010 WL 4199334, n. 1 (S.D. Ohio Jan. 27, 2010) (discussing *Williams v. Wisconsin*, 336 F.3d 576 (7th Cir. 2003), which concluded that a challenge to parole conditions is tantamount to a challenge to confinement because changing a condition of parole would alter the confinement); *Hurst v. Pribe*, 2014 WL 7015184, at *4 (S.D. Ohio Dec. 11, 2014), *report and recommendation adopted*, 2016 WL 1444241 (S.D. Ohio Apr. 13, 2016) ("[I]t is difficult to understand how a constitutional challenge

to one's parole, probation, or supervised release conditions in a civil rights action would not 'necessarily imply the invalidity' of a portion of the plaintiff's sentence . . . .") (quoting *D'Amario v. Weiner,* 2014 WL 1340022, *6 (D.N.J. Apr. 3, 2014)). His challenge, plainly, is to the fact or duration of his confinement and to a violation of his due process rights, not the conditions of his confinement.  The PLRA exhaustion requirement does not reach Plaintiff's claims.[2]  *See Soldan v. Robinson*, 2019 WL 3892564 (E.D. Mich. Aug. 19, 2019).

## 2.   **Habeas Corpus and *Heck v. Humphrey*[3]**

_____

[2] It is not entirely clear that, even if the claims presented in this case were subject to PLRA exhaustion, MDOC grievance policy would allow a grievance on the claims. Among those issues that are not grievable are "Decisions made by the Parole Board to . . . revoke parole."  (ECF No. 21-1, PageID.164, Policy Directive 03.02.130(F)(3)).  While the effective revocation of parole in this case was apparently not made pursuant to a decision of the Parole Board, but rather the decision of the three individual Defendant parole officers, it is not unreasonable to infer that such a decision by parole officers is similarly non-grievable.

[3] I am addressing this issue *sua sponte* as neither of the Defendants raised the *Heck* Doctrine in their motions. The Sixth Circuit has not taken a position on whether *Heck* constitutes an affirmative defense which defendants waive by failing to make them before the Court. *Cummings v. City of Akron*, 418 F.3d 676, 681 n.3 (6th Cir. 2005). However, the Sixth Circuit has affirmed, without analysis, district courts' *sua sponte* dismissal of plaintiffs' § 1983 claims under *Heck. See, e.g., Hunt v. Michigan*, 482 Fed.Appx. 20, 21 (6th Cir. 2012); *Manthey v. Kessler*, 79 Fed.Appx. 153,153-54 (6th Cir. 2003); *Stover v. Mackie*, 15 Fed.Appx. 200, 201 (6th Cir. 2001). And Courts in this District have regularly dismissed plaintiffs' complaints *sua sponte* as barred by *Heck* pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(b). *See, e.g., Soldan v. Robinson*, 2019 WL 3892564 (E.D. Mich. Aug. 19, 2019) (Drain, J.); *Wilson v. County of Wayne*, No. 15-10693, 2015 WL 2126920 (E.D. Mich. May 6, 2015) (Lawson, J.); *Moore v. Hampton*, No. 2:13-CV-13600, 2014 WL 6455629 (E.D. Mich. Nov. 17, 2014) (Drain, J.); *Smith v.*

The Supreme Court in *Preiser* held that when a state prisoner is challenging the very fact or duration of his physical imprisonment, his sole federal remedy is by writ of habeas corpus, not § 1983. 411 U.S. at 500; *Smith v. Taylor-Pedersen*, 2017 WL 7371211 (E.D. Mich. Dec. 27, 2017).  In line with *Preiser*, the Sixth Circuit has held that a prisoner's challenge to a state's parole revocation decisions must be brought by habeas corpus action after exhaustion of state remedies. *See, e.g.*, *Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 288 (6th Cir. 2003); *Miskowski v. Martin,* 57 F. App'x 246, 248 (6th Cir.2003); *Brewer v. Dahlberg,* 942 F.2d 328 (6th Cir.1991); *Hopkins v. Kerns,* No. 89-1962, 1990 WL 40076 (6th Cir. Apr.9, 1990).

Plaintiff did not file a habeas petition, at least not in the instant matter.  In order to maintain a § 1983 case in this circumstance, as Plaintiff attempts here, his case would have to pass the *Heck* doctrine.  The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the

---

*City of Detroit*, No. 12-14278, 2013 WL 1349282 (E.D. Mich. Apr. 2, 2013) (Lawson, J.); *Brown v. Michigan Dep't of Corrs.*, No. 2:10-CV-12649, 2010 WL 5056195 (E.D. Mich. Dec. 6, 2010) (Duggan, J.); *King v. City of Highland Park*, No. 07-15341, 2008 WL 723514 (E.D. Mich. Mar. 17, 2008) (Zatkoff, J.); *White v. Paetz*, No. 4:06-CV-12225, 2006 WL 1698962 (E.D. Mich. June 13, 2006) (Gadola, J.).

conviction or sentence has been "reversed on direct appeal, expunged by executive

order, declared invalid by a state tribunal authorized to make such determination,

or called into question by a federal court's issuance of a writ of habeas corpus."

*Heck v. Humphrey*, 512 U.S. 477 (1994); *see also Edwards v. Balisok*, 520 U.S.

641, 646-48 (1997); *Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007). In

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court clarified the

*Heck* rule, finding "that a state prisoner's § 1983 action is barred (absent prior

invalidation)—no matter the relief sought (damages or equitable relief), no matter

the target of the prisoner's suit (state conduct leading to conviction or internal

prison proceedings)—if success in that action would necessarily demonstrate the

invalidity of confinement or its duration."

Plaintiff does not allege that the parole revocation complained of in this case

was favorably terminated in a prior action.  Plaintiff could maintain this action

only if success here would not invalidate the confinement or its duration, but that is

not the case.  Plaintiff expressly challenges the validity of the effective revocation

of his parole by claiming the violation accusation was false and made in retaliation

for threatening a lawsuit, and by claiming that he was held without due process.

Success on his claims would call into question the validity of the confinement.

*See, e.g., Newmy v. Johnson*, 758 F.3d 1008, 1010-12 (8th Cir. 2014) (finding that

*Heck* barred a plaintiff's civil rights claim against his parole officer for allegedly

reporting falsely that he had violated parole); *Green v. Rondeau*, 2010 WL 549732 (W.D. Mich. Feb. 10, 2010).

Plaintiff's request for relief helps to illustrate the point. Plaintiff filed this suit in May 2019, well after his release in June 2017. In his May 2019 complaint, for obvious reasons, Plaintiff does not seek termination of his confinement. Instead, he seeks a declaration that defendants' actions deprived him of due process prior to the parole revocation in violation of the Fourteenth Amendment, and that their actions violated the First Amendment's prohibition on retaliation for protected activity and amounted to false imprisonment. (ECF No. 1, PageID.26). He seeks injunctive relief enjoining Defendants and their agents from finding that Plaintiff committed the parole violation he was accused of and expunging the parole violation records. He also seeks damages to compensate him for what he alleges was confinement beyond the bounds authorized by law. (*Id.* at PageID.27). In short, Plaintiff's case implies the invalidity of his confinement. If he is successful on his claims, then the underlying "conviction" of the parole violation would be invalid because the violation was falsified in retaliation for protected conduct and he was confined without due process. In sum, *Heck* applies to Plaintiff's claims. *See, e.g. Soldan v. Robinson*, Case No. 19-12227, 2019 WL 3892564 (E.D. Mich. Aug. 19, 2019) (Plaintiff sued Defendant Robinson only for a later, different parole violation accusation. Plaintiff claimed that Robinson made

false statements against him and coerced a witness to testify against him at the formal parole violation hearing in retaliation for the threat to sue over the GPS tether.  District Judge Drain dismissed Plaintiff's suit pursuant to 28 U.S.C. § 1915(a)(1) for failure to state a claim because the suit was barred by *Heck v. Humphrey*.  A ruling on the claims would imply the invalidity of the conviction or imprisonment).[4]

There is an exception to *Heck's* favorable termination requirement that exists in situations, not unlike Plaintiff's, where the opportunity to reverse a conviction is expired, i.e. the plaintiff is no longer in custody.  In *Heck* and other cases, including *Spencer v. Kemna*, 523 U.S. 1 (1998), and *Wallace v. Kato*, 549 U.S. 384 (2007), Justice Souter authored or joined concurring opinions that grappled with how to apply the *Heck* favorable termination requirement in a situation where termination may no longer be possible because the plaintiff's sentence was only a fine, or (as here) the plaintiff completed the short term of imprisonment, or the term expired and the plaintiff did not learn of the violation until after his or her release. *See Heck*, 512 U.S. at 500-03 (Souter, J., concurring);

---

[4] Defendants make no suggestion that the instant matter is barred by *res judicata* based upon the matter that was before Judge Drain in Case No. 19-12227 or any of the other cases listed above. The Court has not analyzed whether the cases relate to the same subject matter, timeframe or causes of action; nor will the Court take up this issue *sua sponte.* It must be raised, if applicable, as an affirmative defense in accordance with Fed. R. Civ. P. 8(c)(1).

*Spencer*, 523 U.S. at 19-21 (Souter, J., concurring); *Wallace*, 549 U.S. at 399 (Stevens, J., concurring). Discussing these concurring opinions in *Powers v. Hamilton Cty. Pub. Defender's Comm'n*, 501 F.3d 592 (6th Cir. 2007), the Sixth Circuit concluded that the favorable termination requirement does not apply where the plaintiff was precluded from seeking habeas redress "as a matter of law"; however, it still applies where "the plaintiff could have sought and obtained habeas review while still in prison but failed to do so." *Id.* at 601. In *Powers*, the court declined to apply the favorable termination requirement because the plaintiff was confined for only one day and could not have sought review of that day's detention.

Plaintiff was confined for a period of forty-three days. He alleges that while confined in Genesee County and at IDRp, he was unable to get grievance forms (even if not necessary), there was no law library, he could not get stamped envelopes, and legal mail was unavailable. (ECF No. 30, PageID.228). This calls into question whether Plaintiff could have sought review of the confinement in the forty-three days in which he was confined. It is also unclear whether such review, if Plaintiff tried, could have been completed in less than forty-three days before he was released on June 22, 2017; although in this Court's experience, it is highly unlikely. Had he brought a habeas petition during his confinement, and review not completed before he was released, it is likely his petition would have been

dismissed as moot.  *See Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013)

(citing *Spencer*, 523 U.S. 1); *cf. Hobbs v. Faulkner*, 2018 WL 4216909, at *5 (S.D.

Ohio Sept. 5, 2018) (Favorable termination rule applied where plaintiff filed

habeas petition, but his own lack of diligence that prevented a merits decision).

Since it is not clear that Plaintiff *could have* sought review of his confinement prior

to his release, Plaintiff is exempt from the favorable termination requirement

because he could not have obtained relief during his confinement.[5]  In other words,

Plaintiff's § 1983 claim should be permitted to go forward.

### E.    Conclusion Regarding Summary Judgment

For the reasons stated above, the Court should **DENY** Defendants' motions

for summary judgment for failure to exhaust.  (ECF Nos. 21, 26).

## III.    PROCEDURAL/DISCOVERY ORDERS

### A.    Plaintiff's Request for Discovery Order

Included in his response to the motions for summary judgment, Plaintiff

included a request that this Court order Defendants to produce documents specified

in the response.  (ECF No. 30, PageID.246).  Seeking discovery in this manner is

improper and the request is **DENIED**.  There is no indication that Plaintiff sent

---

[5] Notably, it is also unclear whether, upon his release on June 22, 2017, any changes were made to his parole because of the accusation made in April that would allow the conclusion that he was still "in custody" for the violation after his release and thus had more time, and could have challenged the sentence.

these requests to Defendants by any means other than through the list provided in

the response brief.  The filing of such discovery requests with the Court

is disallowed under Eastern District of Michigan Local Rule 26.2 and Federal Rule

of Civil Procedure 5(d)(1).  Discovery requests must be made in accordance

with Federal Rules of Civil Procedure 26 through 37.  That is, Plaintiff must send

discovery requests to the Defendants directly for the Defendants to respond in

accordance with the rules.  Using the Court's filing system to get discovery

requests to the defendants is improper.

> ### B. Deadline for filing Defendants' pleadings

In light of the above report and recommendation, Defendants are **HEREBY**

**ORDERED** to file and serve their answers and affirmative defenses on or before

**August 7, 2020**, notwithstanding the provisions of 42 U.S.C. § 1997e, if even

applicable.

## IV. PROCEDURE ON OBJECTIONS

> ### A. Report and Recommendation

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within fourteen days of

service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

### B. Order on Discovery Motions or Non-Dispositive Rulings

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

Date:  July 9, 2020                                   s/*Anthony P. Patti*
                                                      Anthony P. Patti
                                                      United States Magistrate Judge