UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD SOLDAN,

               Plaintiff,                    Case No. 2:19-cv-11334

                                          District Judge Mark A. Goldsmith

v.                                 Magistrate Judge Anthony P. Patti

WILLIAM R. ROBINSON, *et al*.,

               Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 49)

**I.**    **RECOMMENDATION**: The Court should **GRANT** Defendants' motion for summary judgment (ECF No. 49), decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and with no remaining claims against Defendants, dismiss the case.

**II.**    **REPORT**

    **A.**    **Background**

        **1.**    **Factual Background**

Plaintiff Richard Soldan was previously incarcerated with the Michigan Department of Corrections (MDOC), and originally paroled in March 2016.  (Exh. A, Robinson Affidavit and Attachments, ECF No. 49-2, PageID.464-466.) Defendant William Robinson, a former parole agent with the MDOC's Livingston

Parole Office, began serving as Plaintiff's parole agent in January 2017.  (ECF No.

49-2, PageID.461, ¶¶ 1, 4.)

In April 2017, Robinson reportedly began investigating Plaintiff for

potential parole violations after receiving a complaint of inappropriate behavior.

(Exh. A, Robinson Aff., ECF No. 49-2, PageID.461, ¶ 5.)  And then on April 25,

2017, Gaines Police Chief Mark Schmitzer notified him that Plaintiff had been

arrested on a warrant issued out of Flint for failure to pay fees associated with the

Sex Offender Registration Act (SORNA), and was detained in the Genesee County

Jail.  (ECF No. 49-2, PageID.461, ¶ 8; ECF No. 49-2, PageID.476.)  Following

Plaintiff's arrest, Robinson drafted parole violation charges related to his parole

conditions, which included curfew violation, use of alcohol and failure to comply

with proper use of his GPS tether.  (ECF No. 49-2, PageID.462, ¶ 9; ECF No. 49-2,

PageID.472-477.)

On April 26, 2017, Parole Agent Kyle Kendall met with Plaintiff in the

Genesee County Jail and served him with the parole violation charges.  (Exh. A

Attachment – Kendall's Parole Violation Report, ECF No. 49-2, PageID.478-481;

Exh. B, Kendall Aff., ECF No. 49-3, PageID.487, ¶¶ 3-5.)  According to the

Report:

> When interviewed at the Genesee County Jail, the parolee admitted to
> this writer that he violated his parole conditions in the following
> manner: (Count I) He was only there for dinner.  (Count II) He was
> stuck in Gaines and his charger was in Howell.  (Count III) He didn't

consume alcohol, he was there for a burger.  (Counts IV and V) Same as Count II.  (Count VI) Same as Count III.

(ECF No. 49-2, PageID.478, 480; *see also* ECF No. 49-3, PageID.487, ¶ 5.)

Further, Agent Kendall stated: "**Due Process:** Parolee Soldan was served parole

violation charges, Counts 1-6, at the Genesee County Jail by Agent Kyle Kendall.

At that time, the parolee waived his rights to a Preliminary Parole Violation

Hearing.  A CFJ-498 was signed by the parolee.  Parolee appears eligible for

diversion programming.  Parolee is currently AVAILABLE to the Department."

(ECF No. 49-2, PageID.478.)  Indeed, Plaintiff signed the form waiving his

preliminary parole violation hearing.  (ECF No. 49-2, PageID.479.)

Plaintiff was released from the Genesee County Jail on May 10, 2017.  (Exh.

A, Attachment-Parole Violation Worksheet, ECF No. 49-2, PageID.483-484; Exh.

C, James Robertson Affidavit, ECF No. 49-4, PageID.495, ¶ 10; Exh. D, District

Court Register of Actions, ECF No. 49-5.)[1]  Then on May 15, 2017, Robinson

submitted to Defendant MDOC Parole Supervisor Robert A. Warner his

recommendation that Plaintiff be returned to a residential re-entry program and that

parole be continued.  (ECF No. 49-2, PageID.483-484.)  Warner agreed with the

recommendation, which was ultimately submitted to and approved by Defendant

---

[1] The Parole Violation Worksheet lists May 10, 2017, as Plaintiff's "Date Available."  (ECF No. 49-2, PageID.483.)

James B. Robertson, an MDOC Parole Violation Specialist.  (ECF No. 49-2, PageID.484-484; ECF No. 49-4, PageID.493-494, ¶¶ 8-9.)

On May 24, 2017, Plaintiff was moved to "IDRP" at Clinton County Jail, a residential re-entry program, from which he was released on June 22, 2017, and his parole was continued, not revoked.  (ECF No. 49-4, PageID.495, ¶ 10.)  He never had a formal parole violation hearing.

Plaintiff filed his complaint in this action on May 3, 2019, against Robinson, Warner, and Robertson (collectively Defendants), in their individual and official capacities.  (ECF No. 1.)[2]  In Counts I and III-V, Plaintiff claims due process violations under the Fourteenth Amendment, alleging that Robinson found him guilty of parole violations on April 26, 2017, and recommended confinement to a residential re-entry program with no hearing, plea, or waiver, which was approved by Warner and Robertson.  (ECF No. 1, PageID.14-16, ¶¶ 24, 26-28.)  In so doing, he alleges that he waived his parole violation preliminary hearing on the understanding (based on the direct language on the form) that he would receive a formal revocation hearing before being found guilty of the charges, that he requested but was never provided grievance forms while at IDRP-Clinton, and that,

---

[2] As part of its initial screening of the case pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed the Michigan Department of Corrections (MDOC) as a defendant in the lawsuit, as the MDOC is absolutely immune from § 1983 actions under the Eleventh Amendment.  (ECF No. 8.)

"[o]n 6-22-17 when Robinson released Plaintiff from IDRp (6-22-17), Plaintiff asked him 'When's my Hearing?', Robinson said: 'You're Guilty' . . . 'You're not getting a hearing.'"  (ECF No. 1, PageID.10-12.)

In Count II, Plaintiff claims that "Robinson violated [his] right to redress of grievances--secured by the 1st Amendment--when throughout the duration of [his] Confinement (from 5-10-17 through 6-22-17), Robinson (having the power at all times), refused to release [him] from the Confinement, in Retaliation for [his] promises 'of suing [Robinson] over the GPS.'"  (ECF No. 1, PageID.14, ¶ 25.)

Additionally, Plaintiff raises the following state law claims: (1) due process violations under the Michigan Constitution by virtue of State custom and policy in Counts VI and VII; (2) false imprisonment in Count VIII; and (3) in the alternative, gross negligence in failing to provide due process in Count IX.  (ECF No. 1, PageID.17-20, ¶¶ 30-33.)

On November 18, 2019, Robinson and Warner filed a motion for summary judgment on the basis of exhaustion (ECF No. 21), which Robertson adopted and incorporated by reference in his own December 4, 2019 motion for summary judgment (ECF No. 26).  I issued a Report and Recommendation that the Court deny Defendants' motions, because the exhaustion required by the Prisoner Litigation Reform Act (PLRA) does not reach Plaintiff's claims.  (ECF No. 41, PageID.376-380.)  And the Court adopted this Report and Recommendation on

5

October 9, 2020 (ECF No. 46), following which I entered a scheduling order

setting a merits-based dispositive motion deadline of May 14, 2021 (ECF No. 47).

### 2. Instant Motion

On May 14, 2021, the remaining Defendants (Robinson, Warner, and

Robertson) filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56,

asserting entitlement to summary judgment on all of Plaintiff's claims because: (1)

Plaintiff cannot establish a due process violation against Defendants as he waived a

preliminary hearing and was released from custody before the deadline for a

formal parole revocation hearing; (2) Plaintiff cannot establish a due process

violation against Robinson or Warner because they lacked the requisite personal

involvement; (3) even if they improperly denied Plaintiff a formal parole

revocation hearing, the proper remedy would have been a state court writ of

mandamus; (4) Plaintiff cannot show the necessary causation to establish a First

Amendment retaliation claim against Robinson; (5) in the alternative, they are

entitled to qualified immunity; and (6) to the extent sued in their official capacities,

they are entitled to Eleventh Amendment immunity.  (ECF No. 49, PageID.428,

436-456.)

Plaintiff filed a timely response on July 14, 2021, addressing Defendants'

arguments as will be described more fully below, asserting that the regulations

Defendants relied upon should be struck down in their entirety, and stating:

"Plaintiff will leave this to his Honor to decide the 11th Amd. Immunities. Regardless of the decision on the Federal Official Capacity claims, Plaintiff reserves his right to continue the State Claims in Defendant's Official and Individual Capacities.  <u>NOTE</u>: Please take Judicial Notice that Defendant's [sic] have waived any defense to Plaintiff's Pendant State Law Claims; as they failed to defend against them."  (ECF No. 52, PageID.527-532.)  In their reply brief, timely filed, Defendants reiterate the arguments made in their summary judgment motion, but again fail to address Plaintiff's state law claims.  (ECF No. 53.)

### B.  Standard

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing

that if a party "fails to properly address another party's assertion of fact," the court

may "consider the fact undisputed for purposes of the motion"). "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper

evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551,

558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*,

432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must . . . do more than

simply show that there is some metaphysical doubt as to the material facts[.] . . .

[T]here must be evidence upon which a reasonable jury could return a verdict in

favor of the non-moving party to create a genuine dispute.") (internal quotation

marks and citations omitted). In other words, summary judgment is appropriate

when the motion "is properly made and supported and the nonmoving party fails to

respond with a showing sufficient to establish an essential element of its case[.] . .

." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule

56. Rather, "liberal treatment of *pro se* pleadings does not require lenient

treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

## C.   Discussion

### 1.   Plaintiff's Constitutional Claims

#### a.   Constitutional claims against Defendants in their official capacities

Plaintiff sues Defendants under 42 U.S.C. § 1983 in their individual and official capacities. (ECF No. 1, PageID.5-6, 8, 14-16, ¶¶ 24-28.) He seeks injunctive and declaratory relief, as well as punitive and/or compensatory relief. (ECF No. 1, PageID.26-27.) However, as Defendants assert (ECF No. 49,

9

PageID.454-455), they are entitled to sovereign immunity as to Plaintiff's claims against them in their official capacities for monetary damages.

Plaintiff's claims against Defendants in their official capacities are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Put another way, "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Id*. at 169 (internal citation omitted). Thus, the Eleventh Amendment is a bar to Plaintiff's claims for money damages against Defendants in their official capacities, and such § 1983 claims should be dismissed.

However, "the sovereign-immunity doctrine does not bar [Plaintiff]'s suit against [Defendants] in [their] individual capacit[ies], or against [Defendants] in [their] official capacit[ies] with respect to declaratory and injunctive relief[.]" *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 765 (6th Cir. 2010) (internal citations omitted). Accordingly, the Court will consider the viability of these claims.

### b.    Due process

In Counts I and III-V, Plaintiff asserts Fourteenth Amendment due process claims against each Defendant, essentially alleging that he should not have been confined at IDRP-Clinton without a formal parole revocation hearing. (ECF No. 1, PageID.14-16, ¶¶ 24, 26-28.)

Defendants argue that the Court should grant summary judgment on these claims because Plaintiff received all process due under MDOC Policy Directive (PD) 06.06.100, Mich. Comp. Laws (M.C.L.) §§ 791.238 – 791.240a, and *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972).  (ECF No. 49, PageID.436-443; ECF No. 53, PageID.536-540.)  Specifically, they assert that, "[a]s [Plaintiff] waived his preliminary hearing and was released [from IDRP-Clinton] less than 45 days after becoming available to the MDOC [on May 10, 2017], [Plaintiff] cannot prove a due process violation[.]"  (ECF No. 49, PageID.438, 443.)  In response, Plaintiff contends that he only signed the preliminary hearing waiver under the promise of a full revocation hearing, and that no such hearing was ever pending, and there is no record of the parole violation charges having been dismissed.  (ECF No. 52, PageID.527-528.)

### i.    Due process required for parole revocation

In *Morrissey*, 408 U.S. at 482, the Supreme Court held that an individual facing parole revocation is entitled to at least minimal due process protections under the Fourteenth Amendment.  The Court then considered "the nature of the process that is due," and described "two important stages in the typical process of parole revocation[,]" namely: (1) arrest of parolee and preliminary hearing; and (2) the revocation hearing.  *Id*. at 484-89.  The purpose of such requirements is to provide the parolee the opportunity to be heard prior to "a final evaluation of any

contested relevant facts and consideration of whether the facts as determined

warrant revocation." *Id*. at 488.

###### ii. The Court should find that Defendants afforded Plaintiff the minimal amount of due process required

Defendants appropriately rely on PD 06.06.100, effective March 1, 2013,[3] as

it was in use at the time of Plaintiff's parole violation charges, as well as M.C.L.

§§ 791.238-791.240a.  (*See* ECF No. 49, PageID.437-443; Exh. E, ECF No. 49-6.)

PD 06.06.100 represents the MDOC's adoption of policies consistent with the due

process requirements set forth in *Morrissey*.  It provides that a parolee charged

with parole violations receives a preliminary hearing within ten days of arrest,

unless the parolee waives the hearing.  (ECF No. 49-6, PageID.503-505. PD

06.06.100, ¶¶ L-R.)  *See also* M.C.L. § 791.239a(1).  The purpose of this hearing is

to "determine whether probable cause exists that the parolee violated a condition of

parole."  (ECF No. 49-6, PageID.504, PD 06.06.100, ¶ Q.)

If probable cause exists or is found to be waived, the parolee receives a more

formal parole violation hearing "within 45 calendar days after the date the parolee

became available for return to the Department, unless the hearing is waived in

writing by the parolee, the parolee's attorney, or, if the preliminary hearing was

postponed upon request of the parolee, by the Parole Board."  (ECF No. 49-6,

---

[3] PD 06.06.100 was amended July 1, 2018.

PageID.505-506, PD 06.06.100, ¶ W.)  *See also* M.C.L. § 791.240a(3).  "A parolee is available for return to the Department when s/he is being held in custody solely due to parole violation charges."  (ECF No. 49-6, PageID.506, PD 06.06.100, ¶ W.)  *See also Hinton v. Parole Bd.*, 383 N.W.2d 626, 627-29 (Mich. 1986) (a parolee is available on the day the parolee is "incarcerated in a local or county jail solely on the authority of a parole violation warrant" or is released "on local criminal charges where a parole violation warrant has been issued but not executed"); *People v. Wright*, 340 N.W.2d 93, 95 (Mich. 1983).

Plaintiff does not contest that he waived the preliminary hearing, asserting only that he did so with the understanding he would receive a full revocation hearing (ECF No. 1, PageID.10), as the form that he signed states, "I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full revocation hearing before the Parole and Commutation Board."  (ECF No. 49-2, PageID.479.).  Nor does he appear to contest Defendants' assertions (ECF No. 49, PageID.438) that he became "available" to the MDOC on May 10, 2017, that he was released from IDRP-Clinton on June 22, 2017, 43 days after becoming available to the MDOC, or that his parole term remained unchanged, although he does state generally (although incorrectly) that his parole was "revoked" without the requisite hearing.

On the record before the Court, then, Plaintiff was provided all the process due under the Fourteenth Amendment, as articulated in *Morrissey*, PD 06.06.100, and M.C.L. §§ 791.238-791.240a.  Although he never received a formal revocation hearing, he was not entitled to one until at least two days after release from IDRP-Clinton,[4] and again, he does not contest that his parole period remained unchanged.[5]

Plaintiff cursorily asserts in his response brief that he "also declares the regulation Defendant's [sic] may claim they rely on to perform these monstrous acts are invalid and should be struck down in their entirety."  (ECF No. 52, PageID.532.)  But assuming he is referring to PD 06.06.100 and the associated statutes, they seem to comply with the process articulated in *Morrissey* for all of the reasons described above, and he provides no case law to the contrary.

Accordingly, the Court should grant summary judgment on Counts I and III-V, and dismiss those claims against Defendants with prejudice.  And should the Court agree, it need not address Defendants' additional arguments regarding the

---

[4] In fact, this Court, addressing a habeas petition, has reasoned that holding a formal revocation hearing beyond 45 days after availability is presumptively reasonably timely under *Morrissey*.  *Moore v. Hofbauer*, 144 F.Supp.2d 877, 881 (E.D. Mich. 2001); *see also Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003).

[5] Moreover, confinement to re-entry programs is part of MDOC policy for those on parole (*see* ECF No. 49-6, PageID.504-505, PD 06.06.100, ¶ R).

proper forum for a challenge to parole violation charges or personal involvement.

(*See* ECF No. 49, PageID.443-446; ECF No. 53, PageID.540-541.)

### c.    First Amendment retaliation

Plaintiff asserts a First Amendment retaliation claim against Robinson only,

in Count II of his complaint, stating:

> Robinson violated Plaintiff's right to redress of grievances--secured
> by the 1st Amendment--when throughout the duration of Plaintiff's
> Confinement (from 5-10-17 through 6-22-17), Robinson (having the
> power at all times), refused to release Plaintiff from the Confinement,
> in Retaliation for Plaintiff's promises "of suing [Robinson] over the
> GPS."

(ECF No. 1, PageID.14, ¶ 25.)  In so doing, he alleges:

> Plaintiff admits he repeatedly complained to Robinson and Warner
> about the GPS, and other parole conditions.  The Parole Board never
> orders GPS as a condition, when deciding to parole Plaintiff.  It is
> Robinson who requests it, and Plaintiff refuses to agree to it, because
> it's contrary to Law (which allows GPS for only 3 specific offenses,
> which Plaintiff has never had).
>
> On 1-20-17 Plaintiff told Robinson "I'm fighting you on the GPS."
> "I'm filing with the Supreme Court, because it's contrary to law."
> Robinson said "I don't care about the law, I follow policy."
>
> Starting 4-24-17 through 5-15-17 Robinson placed false and
> innaccurate [sic] information (including alleged witness statements) in
> Plaintiff's file (CFJ-226, CFJ-110, & CFJ-100A).  This false
> information was never subjected to any test of reliability, does not
> pass the Constitutional muster of Morrissey or Due Process, and was
> substantially relied on to Revoke Plaintiff's Liberty.

(ECF No. 1, PageID.11, ¶¶ 3-5.)

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendants argue that Robinson is entitled to summary judgment on this claim because he cannot demonstrate a genuine issue of material fact regarding causation, citing: (1) Agent Kendall's affidavit and statements in the parole violation report that Plaintiff admitted to parole violations; (2) the time gap between the alleged conversation with Robinson regarding GPS and the parole violation charges; and (3) Plaintiff's confinement in the Genesee County Jail for committing a crime while on parole. (ECF No. 49, PageID.446-449; ECF No. 53, PageID.541-542.) For the reasons that follow, I agree.

"[C]ausation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, but also (2) that the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (quotation marks and citations omitted). "It is not enough to show that an

16

official acted with a retaliatory motive and that the plaintiff was injured – the

motive must *cause* the injury.  Specifically, it must be a 'but-for' cause, meaning

that the adverse action against the plaintiff would not have been taken absent the

retaliatory motive." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019).  Further, "[a]n

officer may . . .  be held liable under § 1983 for the natural consequences of his

actions.  This includes liability for acts giving rise to the ultimate harm, even if the

harm is executed by someone else." *King*, 680 F.3d at 695 (quotation marks and

citations omitted).

Defendants have produced evidence not only that Plaintiff violated his

parole conditions, leading to the subject charges against him, but also that he was

arrested during the same time for a SORNA violation.  For example, Robinson

states in his affidavit that he began investigating Plaintiff "after receiving a

complaint by two females at the Kensington Inn," Plaintiff's residence, in April

2017, "of inappropriate behavior[,]" and that Plaintiff was supposed to report to the

parole office on April 25, but he received notification that Plaintiff had been

arrested on a separate warrant in Genesee County.  (ECF No. 49-2, PageID.461, ¶¶

5-8.)  He states that he then drafted parole violation charges, which he forwarded

to Agent Kendall at the Genesee County Parole Office (where Plaintiff was being

held on the separate warrant), and:

> I drafted the parole violations against [Plaintiff] as a result of
> [Plaintiff's] behavior and for no other reason.

I did not retaliate against [Plaintiff] in any way.  I would have filed
the same parole violations against him regardless of any disagreement
over his GPS condition or any threat to sue regarding his GPS
condition.

(ECF No. 49-2, PageID.462, ¶¶ 9, 13-14.)  The Parole Violation Charges included:

**Count 1, Violation of Condition 10 and Special Condition 2.0, Not
use alcohol:** On or about 4/20/17 you failed to comply with the
written Order of Parole Board 2.0 by being in bar, the Block Brewing
Company.

**Count 2, Violation of Condition 10 and Special Condition 4.19,
Comply w/ GPS:** On or about 4/24/2017 you failed to comply with
the written Order of Parole Board 4.19 when you violated your curfew
by 10 hours by failing to return home by 9pm on 4/24/17.

**Count 3, Violation of Condition 10 and Special Condition 2.0, Not
use alcohol:** On or about 4/24/2017 you faileded [sic] to comply with
the written Order of Parole Board 2.0 by consuming alcohol at the
Gaines Bar.

**Count 4, Violation of Condition 04, Conduct:** On or about 4/25/17
you were involved in behavior which constitutes a violation of State
law when you failed to charge your GPS unit.

**Count 5, Violation of Condition 04, Conduct:** On or about 4/25/17
you were involved in behavior which constitutes a violation of State
Law when you failed to charge your GPS unit.

**Count 6, Violation of Condition 10 and Special Condition 2.0, Not
use alcohol:** On or about 4/24/2017you [sic] failed to comply with the
written Order of Parole Board 2.0 by being [at] a bar, the Gaines Bar.

(ECF No. 49-2, PageID.472.)  And the Parole Violation Report indicates that

witnesses, including but not limited to Robinson himself, could testify to the

violations.  (ECF No. 49-2, PageID.473-474.)

Further, Agent Kendall, in his own affidavit, states:

> I vaguely remember serving the charges on Soldan.  However, it is
> both my habit and routine practice and a requirement of my duties as a
> Parole Agent to document such information in the parolee's official
> Parole Violation Report.  I did so regarding my meeting with Soldan.
> (Attachment A.)
>
> During my interview with Soldan, he admitted to me that he violated
> his parole in the following manner: Count 1) He was only there for
> dinner.  (Count II) He was stuck in Gaines and his charger was in
> Howell.  (Count III) He didn't consume alcohol, he was there for a
> burger.  (Counts IV and V) Same as Count II, (Count VI) Same as
> Count III.

(ECF No. 49-3, PageID.487, ¶¶ 4-5.)  And the contents of his Parole Violation

Report are consistent with the statements made in his affidavit.  (ECF No. 49-4,

PageID.490.)

From this evidence, the Court should conclude that Defendants satisfied

their initial burden of proving a lack of genuine factual dispute with respect to

causation, as the evidence demonstrates that Robinson drafted charges against

Plaintiff because he violated parole conditions, not because Plaintiff threatened to

sue over the GPS tether terms, and that Robinson recommended confinement to the

re-entry program at IDRP-Clinton as a result of those violations.  *See Stansberry*,

651 F.3d at 486.  And neither the allegations in Plaintiff's complaint nor his

response brief, both signed under penalty of perjury (ECF No. 1, PageID.34; ECF

No. 52, PageID.534), create a genuine issue of material fact regarding causation.

As provided above, Plaintiff alleges that he confronted Robinson about his GPS

tether and threatened to sue in January 2017 (ECF No. 1, PageID.11, ¶ 4), but that was three months prior to Robinson's issuance of the parole violation charges. *King*, 680 F.3d at 695-96 ("We have previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive.").  Further, he asserts that Robinson placed false and inaccurate information, including alleged witness statements, in his file between April 24, 2017 and May 15, 2017 (ECF No. 1, PageID.11, ¶ 5), that Robinson admitted to confining him at IDRP-Clinton because of his threat to sue (ECF No. 1, PageID.12, ¶ 17), and that Kendall lied about Plaintiff admitting parole violations (ECF No. 52, PageID.531), but he never explicitly asserts that he did not violate parole for the reasons charged.  Thus, even viewing this evidence in a light most favorable to Plaintiff, no reasonable jury could conclude that but for Plaintiff's threats to sue Robinson over the GPS tether, Robinson would not have charged Plaintiff with parole violations or recommended the re-entry program at IDRP-Clinton. *Alexander*, 576 F.3d at 558; *Lee*, 432 F. App'x at 441; *Stansberry*, 651 F.3d at 486.

Accordingly, the Court should grant summary judgment on Count II, Plaintiff's First Amendment retaliation claim against Robinson.

### 2.    Qualified immunity

Defendants also assert entitlement to qualified immunity from Plaintiff's constitutional claims.  (ECF No. 49, PageID.449-454.)  The doctrine of qualified

immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stoudemire v. Mich. Dep't of Corrections*, 705 F.3d 560, 567 (6th Cir. 2013) (quotation marks and citations omitted). "In resolving a government official's qualified immunity claims, we look to whether (1) the facts that the plaintiff has alleged or shown establish the violation of a constitutional right, and (2) the right at issue was 'clearly established' at the time of the alleged misconduct." *Id.* "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Id.* at 568. But ultimately, "the burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Id.* (quotation marks and citation omitted).

As Plaintiff has failed to demonstrate a genuine issue of material fact regarding whether Defendants committed any constitutional harm against him, described in detail above, the Court should conclude that Defendants are entitled to qualified immunity.

### 3.   Plaintiff's state law claims

Although, as Plaintiff points out (ECF No. 52, PageID.532), Defendants glaringly fail to address his state law claims in either their summary judgment

motion or reply brief, should the Court agree with the above recommendations, it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismiss the complaint in its entirety. *See* 28 U.S.C. § 1367(a) and (c); *Grace v. USCAR*, 521 F.3d 655, 679-80 (6th Cir. 2008).

### D.    Conclusion

The Court should **GRANT** Defendants' motion for summary judgment (ECF No. 49), decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and with no remaining claims against Defendants, dismiss the case.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 23, 2022

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE